IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DAVID MILLER, an individual,

    Plaintiff,

v.                                               Case No. 3:23-cv-00467

CITY OF HUDSON, WISCONSIN;

GEOFF WILLEMS,
in his official capacity as Chief of Police
for the City of Hudson Police Department;

BRAD KUSMIREK,
individually and in his official capacity as a police officer
for the Hudson Police Department,

    Defendants.

**VERIFIED COMPLAINT**

Comes now Plaintiff David Miller, by counsel, and aver the following:

**INTRODUCTION**

1. This is a civil rights action brought under 42 U.S.C. § 1983, challenging the City of Hudson's policy and practice that empowers and enables the Hudson Area Chamber of Commerce to bar religious expression from Lakefront Park, a public park, during the Spirit of the St. Croix Art Festival, an annual event that is free and open to the public.

2. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff David Miller seeks injunctive relief, declaratory relief, and nominal damages against the City of Hudson,

1

Wisconsin, Geoff Willems, in his official capacity as Chief of Police for the City of Hudson Police Department; Brad Kusmirek, individually and in his official capacity as police officer for the Hudson Police Department.

3. This action is premised on the First and Fourteenth Amendments to the United States Constitution regarding Plaintiff's right to free speech and right to due process.

4. Defendants' actions have deprived and persist in depriving Plaintiff of his constitutional rights.

5. Each and every act of Defendants, as alleged herein, was committed by named Defendants under the color of state law and authority.

## JURISDICTION AND VENUE

6. This action relates to federal questions arising under the First and Fourteenth Amendments to the United States Constitution and federal statue, 42 U.S.C. § 1983.

7. This Court has original jurisdiction over Plaintiff's claims for injunctive relief and nominal damages via 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over Plaintiff's request for declaratory relief via 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over Plaintiff's request for costs and attorney fees under 42 U.S.C. § 1988.

8. The proper venue is the Western District of Wisconsin under 28 U.S.C. § 1391(b). All Defendants reside in this district and actions giving rise to the claims occurred in this district.

## PLAINTIFF

9. Plaintiff David Miller ("Miller") is a resident of Kerkhoven, Minnesota.

## DEFENDANTS

10. Defendant City of Hudson, Wisconsin ("Hudson") is a municipal government authority in the State of Wisconsin. Hudson owns, controls, and is responsible for regulation of public parks and ways throughout the city, including Lakefront Park in Hudson.

11. Defendant Geoff Willems ("Chief Willems") is Chief of Police for the Hudson Police Department. In his official capacity, Chief Willems is responsible for overseeing and implementing all policies affecting law enforcement, including law enforcement in public parks in the city.

12. Defendant Brad Kusmirek ("Sergeant Kusmirek") is a patrol sergeant with the Hudson Police Department. In his official capacity, Sergeant Kusmirek is charged with enforcing laws, regulations, and policies of Lakefront Park during the Spirit of the St. Croix Art Festival. Sergeant Kusmirek is sued in his individual and official capacities.

## STATEMENT OF FACTS

### Miller's Religious Speech

13. Miller is an evangelical Christian who sincerely believes that he is called to share his faith with others in public.

14. Miller's message is evangelistic in nature. He wants to convey to others that whoever trusts in Jesus Christ as their savior will be saved. He also wants to provide his view on social issues based on his religious beliefs.

3

15. Miller wants to share the gospel (good news of Jesus Christ) wherever significant number of people are found. For this reason, he often goes to public events within reasonable driving distance of his home to share his beliefs.

16. To communicate this message about his faith, Miller primarily holds signs and hands out written literature. He also occasionally preaches (publicly orates).

17. The signs he uses present a scriptural message relating to the gospel or a biblical perspective on a social issue while his literature contains more detailed information about the Christian faith and the importance of it. His preaching is more detailed as well.

18. Miller considers hand-held signs critical to his communication because they afford him an opportunity to share his views with many people at the same time.

19. Miller also views literature distribution as an essential means for conveying his message because he can provide the gospel to individuals who do not have the time or inclination to stop and visit with him.

20. When Miller shares his beliefs in public, he is careful not to obstruct passageways. He does not hinder pedestrian traffic or create congestion.

21. Also, in sharing his faith, Miller does not obstruct pedestrian traffic or solicit. He does not seek money, membership or signatures.

22. Miller only wants to share his Christian beliefs.

23. In particular, Miller wants to share his faith in Lakefront Park in Hudson during the annual Spirit of the St. Croix Art Festival due to the large number of people who attend this public event.

24. This next Spirit of the St. Croix event is scheduled to take place on September 23 and 24, 2023.

25. He also wishes to convey his message in Lakefront Park when it hosts other events open to the public.

### Lakefront Park

26. Lakefront Park is a public park in Hudson, owned and managed by Hudson.

27. The park is bordered by 1st Street to the east and the St. Croix River to the west.

28. As a public park, Lakefront Park is open to the general public all year-round. It contains a boat launch, multiple picnic shelters, a playground area, two sand volleyball courts, a beach with on-duty lifeguards in the summer, a bandshell that hosts summer concerts as well as other large events, paved trails, and a nice view of the river.

29. As one of the most popular attractions in the city, Lakefront Park is uniquely well-suited for expression and the free exchange of ideas.

### The Spirit of the St. Croix Art Festival in Lakefront Park

30. The Spirit of the St. Croix Art Festival ("Art Festival") is an annual two-day event that takes place at Lakefront Park every September.

31. Lakefront Park serves as the centerpiece for the festival, offering space for an array of vendors, artists, exhibits, hands-on demonstrations, and activities for the event.

32. During the Art Festival, various vendors sell food, artwork, as well as handmade products, including wind chimes, pottery, and jewelry. Festival activities include live music, contests, and aerialist performances.

33. The Art Festival is organized by the Hudson Area Chamber of Commerce & Tourism Bureau ("Chamber of Commerce") in partnership with The Phipps Center for the Arts.

34. The festival event is free and open to the public at all times. There is no charge for admission to the festival, no need for a ticket, no requirement for an invitation, and no barriers precluding free pedestrian entry.

35. In 2022, the Art Festival in Lakefront Park had three sperate entry points to access the event.

36. To put on the Art Festival, in accordance with Hudson City Ordinance § 150-3, the organizer, the Chamber of Commerce, must secure a special event permit each year from the city to use Lakefront Park for this purpose.

37. The special event permit for the 2022 Art Festival specifies that the event is a free entry event.

38. This special event permit also sets out the Chamber of Commerce's duty to comply with any applicable laws of Hudson.

39. Hudson City Ordinance § 150-5(N) requires public parks in Hudson, including Lakefront Park, continue to allow for public use during special events, like the Art Festival.

**Hudson Squelches Miller's Speech at the Art Festival**

6

40. On Saturday, September 24, 2022, Miller drove from his home in Minnesota to Lakefront Park in Hudson to share his Christian faith with others in the park during the 2022 Art Festival.

41. Miller arrived at the festival mid-afternoon that day. He intended to convey his beliefs through holding signage and distributing literature.

42. Miller specifically chose this date and location because he knew the Art Festival was taking place at that time, promising a significant audience for his religious message.

43. As soon as Miller arrived at the park, he encountered a private security guard for the event who indicated his signage might not be allowed. Miller asked about a posted notice "no carry ins" and learned the prohibition would include signs along with coolers.

44. Miller did not understand the concern, as he understood the park to be a public park and the event was free and open to the public.

45. He queried the security guard about the concern regarding signs, passing along his understanding that he should be able to speak in a public park during a public event.

46. The security guard responded that the Chamber's agreement to use the park turned the event into a private event, though open to the public.

47. Miller was troubled by the stance. He asked if he could speak with the event director about the concern, and, a few minutes later, the Art Festival director, Mary Claire Olson Potter ("Potter"), arrived.

7

48. After exchanging pleasantries, Miller informed Potter that he wanted to share his religious message in the park. He specifically mentioned that he would like to use his signage.

49. Potter countered that the Chamber of Commerce reserved the park and paid for the park for two days, indicating the park was private and off limits to individuals like Miller who did not have a reservation during the event.

50. Miller asked Potter if visitors could freely enter the park and she confirmed they could enter, but indicated to Miller that he could not engage in expressive activity in the park.

51. Miller suggested they get the police involved to determine whether the Chamber of Commerce could eliminate his message. He called the Hudson Police Department and moved outside the park while he waited for a police officer to arrive.

52. Miller wanted to press the issue because he needed to be inside the park to reach people attending the event with his message.

53. He assumed the Hudson police would resolve the matter by informing festival officials of his constitutional right to speak in the park.

54. Several minutes later, Officer Traeger (badge no. 4156) with the Hudson Police Department approached Miller while he was standing outside Lakefront Park.

55. Miller recounted to him how festival officials sought to keep him from engaging in speech activities in the public park. He informed the officer that the event director believes the park is private during the event and of his belief that the park remains public.

56. However, Officer Traeger disputed Miller's depiction of the park as public, claiming the festival organizer could "kick out" whomever they wished from the park since they paid to reserve the park.

57. At this point, Potter walked up and joined their conversation. Miller asked the police officer if he would enforce the event director's wishes to kick him out of the park.

58. Confirming he would do so, Officer Traeger elaborated that the Chamber of Commerce was able to keep anyone out of the park because they were paying for the space and this circumstance made the park a private event for the weekend.

59. Miller advised that he wanted confirmation from someone in charge at the Hudson Police Department on whether he could go into the park, assuring the officer that he would leave on his own accord if the restriction against him was confirmed. He just wanted clarity.

60. The police officer repeated to Miller that he could not go in the park unless he had approval from the Chamber of Commerce. Miller stated he would like to speak to the officer's supervisor about the issue and the officer promptly called in the request.

61. Subsequently, Sergeant Kusmirek (badge no. 4120) with the Hudson Police Department walked up to Miller, Officer Traeger, and Potter.

62. When asked how he could help, Miller reiterated his concerns about the banishment, stressing his constitutional right to speak in a public park during an event free and open to the public.

63. Sergeant Kusmirek did not agree with Miller. He replied that the Art Festival is a "private" event because the festival organizer pulled a permit from the City and they could properly keep Miller from coming into the park and speaking.

64. Miller tried to figure out the parameters of the ban. Sergeant Kusmirek elaborated that Miller could not use a sign because the event organizer had "established" that they did not want his signs in there.

65. The sergeant expounded that Miller could only do what the event organizer had approved.

66. Miller asked if he could put away the sign and go into the park and hand out leaflets. After conferring the with event director, the sergeant advised "no," he could not hand out leaflets in the park.

67. Miller then inquired if he could preach in the park without any signage. The sergeant replied that the event is for the arts, and since the Chamber of Commerce secured a permit for the park, they can limit the purpose, and so, the answer would be "no."

68. Miller asked the police officer what law he would violate by speaking in the park. Sergeant Kusmirek responded that "for sure" Miller would be charged for trespassing and possibly disorderly conduct if he tried to speak in the park during the event.

69. The sergeant reiterated that the police department would issue Miller a citation if he tried to force his speech in the park. Fearing sanction, Miller assured the sergeant that he would not force his speech in the park.

10

70. Sergeant Kusmirek added that Miller could come to the park and engage in speech as long as no permit is in effect.

71. To assure they were "all on the same page," Potter requested Sergeant Kusmirek to confirm in the presence of Miller that the ouster remained in effect for the duration of the festival. And the sergeant confirmed this effect.

72. Fearing citation and possible arrest for sharing his message, Miller refrained from speaking in the park.

73. Miller did not attempt to come back to Lakefront Park during the Art Festival following his ejection.

### Perpetual Impact on Miller's Religious Speech

74. This perpetual ban on Miller's expression is untenable for him because he wants to return to Lakefront Park to share his religious beliefs at the Art Festival in the future as well as other public events occurring in the park.

75. Hoping to resolve the dilemma, without resorting to litigation, Miller, through legal counsel, sent a letter dated November 1, 2022, to Mayor O'Connor and Police Chief Willems of Hudson, requesting relief from the ban on his expression at the Art Festival.

76. The letter described the happenings of September 24, 2022, explaining why the actions of Hudson and Hudson police officers in prohibiting his signs and literature distribution violated Miller's constitutional rights and continue to do so.

77. The letter cited relevant case law delineating Miller's constitutional freedom to hold a sign and pass out literature in a traditional public forum during the public event.

78. He pointed out that neither Hudson nor the festival organizer had changed the nature of the public forum during the Art Festival, rendering the ban on Miller's speech unconstitutional.

79. Miller's letter also sought relief from city officials, asking written assurance that they would let Miller partake in his desired expressive activities at the Art Festival and other public events on city property.

80. On November 15, 2022, counsel for Hudson responded to Miller's letter, but the correspondence failed to assuage Miller's concerns.

81. The author claimed it was "clear" that Miller's First Amendment rights were not violated by the ban on his speech. In the interest of "effectuating an expedient resolution," Hudson offered to pay Miller $1,500 in exchange for his full release of any and all claims, but the City refused to assure Miller of his freedom to speak in the park in the future.

82. Miller was disheartened by the response. Hudson confirmed that it will persist in silencing his religious expression in Lakefront Park at future Art Festival events and other public events in the park whenever the organizer objects to Miller's speech.

**Immediate and Enduring Irreparable Harm to Miller**

83. The actions and statements of Hudson demonstrate its intention to maintain a policy and practice that grants the Art Festival and other permittees control over Lakefront Park during public events, enabling and empowering the organizer to exclude religious expression from the public park. This marks the policy and practice as an unconstitutional heckler's veto enforced by Hudson's police department.

84. Hudson's application and enforcement of this policy and practice facilitates a content-based and a viewpoint-based restriction on Miller's religious expression in a public forum.

85. Miller is eager to return to the Art Festival in Lakefront Park in the Fall of 2023 to share his beliefs, but the fear of citation or arrest chills and deters him from doing so.

86. Miller would also like to attend and speak at other public events taking place in Lakefront Park but fears the same outcome as the Art Festival event.

87. The fear of arrest severely restricts Miller's constitutionally protected speech he wishes to express in Lakefront Park during public events.

88. The chill on Miller's exercise of his First Amendment rights constitutes irreparable harm to Miller.

89. There is no adequate remedy at law for the denial of Miller's constitutional rights.

## FIRST CAUSE OF ACTION

**Deprivation of Civil Rights Under 42 U.S.C. § 1983**
**(First Amendment Free Speech Clause)**

90. Miller incorporates by reference the allegations in this Complaint as though set forth fully herein.

91. Miller's religious expression is protected speech under the First Amendment and Lakefront Park is a traditional public forum, including times when the Spirit of the St. Croix Festival takes place.

13

92. Defendants' policy and practice, and enforcement thereof, including, but not limited to giving festival organizers a heckler's veto on public property and the resulting ban of disfavored expression in Lakefront Park:

    a. are vague and overbroad;

    b. discriminate against speech because of its religious content;

    c. discriminate against speech on the basis of the speaker's religious viewpoint;

    d. restrain constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

    e. chill the free speech of Miller and third-party citizens not before the Court;

    f. permit the exercise of unbridled discretion;

    g. create a content-based heckler's veto that suppresses Miller's religious expression due to hostility toward the message;

    h. lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and

    i. are patently unreasonable.

93. Defendants have no legitimate reason that can justify their censorship of the religious viewpoints that Miller wants to convey in a public park.

94. Defendants' policy and practice, and the enforcement thereof, thus violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

WHEREFORE, Miller respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## SECOND CAUSE OF ACTION

### Deprivation of Civil Rights Under 42 U.S.C. § 1983
### (Fourteenth Amendment Due Process Clause)

95. Defendants' policy and practice that grant proprietary control and a heckler's veto to festival organizers on public property and the consequent ban on unwanted expression at Lakefront Park during the Spirit of the St. Croix Art Festival are vague and lack sufficient objective standards to curtail the discretion of city officials. As a result, policies affecting protected speech are administered in an *ad hoc*, arbitrary, and discriminatory manner.

96. Defendants have no compelling or legitimate reason that can justify their vague policies and practices.

97. The policies and practices, and Defendants' enforcement thereof, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Miller respectfully prays the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Miller respectfully prays for relief in that this Court:

A. Assume jurisdiction over this action;

B. Enter a judgment and decree declaring the actions taken by Defendants in prohibiting Miller from sharing his religious viewpoints in Lakefront Park during the Spirit of the St. Croix Art Festival, a public festival, on September 24, 2022, violated Miller's constitutional rights, especially his rights to free speech and due process.

C. Enter a judgment and decree declaring that Defendants' policy and practice of empowering the Chamber of Commerce and other permittees to retain proprietary control of Lakefront Park during a public event is unconstitutional on its face and as applied to Miller's desired speech (holding a sign and distributing literature) because it violates Miller's rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution.

D. Enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying Defendants' policy and practice enabling a heckler's veto of a permittee so as to banish disfavored expression in public parks during public events that are free and open to the public;

E. Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

F. That this Court award Plaintiff nominal damages arising from the acts of the Defendants as an important vindication of his constitutional rights;

G. That this Court award Plaintiff his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

H. Grant such other and further relief as appears to this Court to be equitable and just.

                                      Respectfully submitted,

                                      Center for Religious Expression

Dated: July 12, 2023          /s/ Nathan W. Kellum
                                      NATHAN W. KELLUM
                                      TN BAR #13482; MS BAR #8813
                                      Center for Religious Expression
                                      699 Oakleaf Office Lane, Suite 107
                                      Memphis, TN 38117
                                      (901) 684-5485 – Telephone
                                      (901) 684-5499 – Fax
                                      nkellum@crelaw.org
                                      Attorney for Plaintiff David Miller

## VERIFICATION OF COMPLAINT

I, David Miller, a citizen of the United States and a resident of Kerkhoven, Minnesota, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

*David Miller*
DAVID MILLER

## CERTIFICATE OF SERVICE

  I hereby certify that on July 12, 2023 the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, and that a copy of the foregoing will be delivered to a process server for service on defendants.

s/ Nathan W. Kellum

Attorney for Plaintiff
